**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| MELISSA SOBOTA, | ) |
| | ) |
| Plaintiff, individually and on behalf of a Plaintiff class, | ) |
| | ) |
| v. | ) |
| | ) |
| SEARCH CACTUS LLC, FOSINA MARKETING GROUP INC., | ) |
| NORTH AMERICAN MEMBERSHIP GROUP, INC., | ) |
| EMUSIC.COM INC., CONSUMERINFO.COM INC., | ) |
| NET MARKETS LLC, INTERNATIONAL MASTERS | ) |
| PUBLISHING INC., ANNIE'S PUBLISHING LLC, EQUIFAX | ) |
| INFORMATION SERVICES LLC, EFAMILY NETWORK INC. | ) |
| REAL NETWORKS, INC., PARADIGM VISIONS INC., PLAYERS | ) |
| VACATION CLUB, INC., JBR MEDIA VENTURES LLC, FIND FINE | ) |
| DEALS LLC, INUVO INC., MEREDITH CORPORATION, | ) |
| SANDVIK PUBLISHING INTERACTIVE INC., | ) |
| and JOHN DOES, | ) |
| | ) |
| Defendants, individually and on behalf of a Defendant class, | ) |

## Class Action Complaint

Plaintiff, MELISSA SOBOTA, by her attorneys, Christopher V. Langone and Mark

T. Lavery, brings this "Defendant Class Action" against Defendants and a Defendant

Class to redress and enjoin unlawful "$1000 Giftcard" prize text message marketing

practices for a Class under the federal Telephone Consumer Protection Act, 47 U.S.C. §

227 (TCPA) and for a SubClass under the Illinois Prizes and Gifts Act 815 ILCS 525/40.

## INTRODUCTION

1.      This case grows out of a nationwide unfair marketing scheme that involves

the "text spamming" of misleading "$1000 Giftcard" prize offers to millions of Americans'

cell phones.

2.      Defendant Search Cactus LLC like dozens of other internet marketers in

the Defendant class is engaged in making and sending these unauthorized and

unsolicited commercial electronic text messages to the mobile telephones of Plaintiff and class members throughout the United States in order to promote offers from businesses such as Equifax, Gamehouse, Baby Einstein, Better Homes and Gardens and Emusic.com.

3.     Defendants and members of the Defendant Class made prizes offers for $1,000 gift cards for retail companies like Best Buy, Walmart and Target.

4.     Defendants and the members of the Defendant Class commonly sent prize text message that would communicate, "Best Buy Winner #66498! You WON the BEst Buy Gift Card worth $1000! Claim your Gift at www.bit.ly/ViWQC0 now! Use the code 5405 or "Your entry in our drawing WON you a FREE $1,000 BestBuy Giftcard! Enter "405" at www.bestbuy.combvnz.biz to claim it and we can ship it to you immediately!"

5.     On December 4, 2012 at 5:46 p.m., Plaintiff received an unsolicited text message telling her she won a Best Buy Gift Card Worth $1000.

6.     Defendants and members of the Defendant class sent other prize text messages that stated, "You won a free $1000 Walmart Gift Card, enter code "FREE" at http://wingc.biz/wm"

7.     The text messages sent by Defendants and the Defendant class were common and typical -- (1) they told the consumer they won a $1000 giftcard to a major retailer and (2) they directed the consumer to a link to the Internet.

8.     In actuality, the $1000 Giftcards were not free prizes but merely a misleading inducement to give up personal information and/or give up consumers' credit card information to purchase goods and services via online transactions.

9.      On March 7, 2013, the FTC announced a crackdown on marketers that sent spam text messages promoting free gift cards. See Exhibit A.

10.     The FTC charged 29 defendants with sending millions of unwanted text messages that "promised consumers free gifts or prizes, including giftcards worth $1,000 to major retailers such as Best Buy, Walmart and Target."

11.     The conduct of Defendants and the Defendant Class violates the Telephone Consumer Protection Act (TCPA) in addition to the FTC Act.

12.     The unsolicited text message spam calls represent an "artificial voice" and are made using equipment with the capacity to store or produce telephone numbers to be called, using a random or sequential number generator and to dial such numbers -- -- namely computers.

13.     The TCPA bans marketers from making these text message calls under 47 USC 227(b)(1)(a)(iii) and 47 USC 227(b)(B).

14.     The FTC is not pursuing claims under the TCPA.

15.     Furthermore, Defendants and other members of the Defendant Class were not named as a parties in the FTC crackdown lawsuits but nonetheless they were involved in the $1,000 Giftcard marketing scheme.

16.     This case seeks to hold Defendants and members of the Defendant class responsible for making and sending these $1,000 Giftcard text message calls to Plaintiff and Plaintiff class members' mobile telephones under the TCPA. Plaintiff also seeks certification of an Illinois SubClass under the Prizes and Gifts Act.

**PARTIES**

17.     Plaintiff Melissa Sobota is a citizen of the state of Illinois.

18.    Search Cactus LLC (Cactus Media) is a Michigan LLC doing business as Cactus Media. Cactus Media is an affiliate network marketer that has a private network of "publishers" that promote offers for the "advertiser" Defendants.

19.    Fosina Marketing Group with a principal place of business in Connecticut is an internet marketing company that promotes brands such as Amora Coffee and Dr. Suess and his Friends for related companies Sandvik Publishing Interactive Inc. and International Masters Publishers Inc. both with a principal places of business in Pennsylvania.

20.    Emusic.com Inc. has a principal place of business in New York and it id an online music download service that is an advertiser who makes offers that are part of the $1000 giftcard text message.

21.    Consumerinfo.com Inc. is an Experian Company and has a principal place of business in California and it is a seller of consumer reports that is an advertiser who makes offers that are part of the $1000 giftcard text message.

22.    North American Membership Group Inc. has a principal place of business in Minnesota and is an advertiser who makes offers that are part of the $1000 giftcard text message for products such as Santoku Knife.

23.    Players Vacation Club Inc. promote and operate the 1st Platinum Plus Card program and has a principal place of business in California.

24.    Net Markets LLC promotes Biogeniste and has a principal place of business in New York.

25.    Annie's Publishing LLC is a division of DRG and has a principal place of business in Indiana.

26.     Equifax Information Systems is a consumer reporting agency and has a principal place of business in Georgia.

27.     Efamily Network Inc. has a principal place of business in Utah and operates web businesses including Family Safe Life.

28.     Real Networks Inc. operates Gamehouse and has a principal place of business in Washington.

29.     Paradigm VIsions Inc. has a principal place of business in Pennsylvania and promotes government auction information websites.

30.     JBR Media Ventures has a principal palce of business in Maryland and qq

31.     Inuvo Inc. is an Internet Marketing Company that operates Yellowise and has a principal place of business in New York.

32.     Find Fine Deal LLC has a principal place of business in New York.

33.     Meredith Corporation has a principal place of business in Iowa.

## JURISDICTION AND VENUE

34.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C § 1332 because she brings a claim under the TCPA at 47 U.S.C. § 227. The Court has supplemental jurisdiction over the state law claims.

35.     Venue is proper in this District under 28 U.S.C. § 1391(a) as the injury arose in this District. Venue is additionally proper because Defendants transact significant business in this District, including exploiting consumer in this district.

## FACTS

36.     Cactus Media is in the internet marketing business.

37.     Cactus Media connects publishers and advertisers through "performance based marketing" or "affiliate marketing".

38.     Affiliate marketing is a type of performance based marketing in which the advertising buyer only pays when a measurable event occurs -- for example when a consumer submits their email or the consumer gives their credit card number to purchase the product.

39.     In this type of marketing, the affiliate tries to get consumers to click an Internet link, give their email address or purchase a product on the Internet.

40.     The creation of mobile "smartphones" such as Blackberries, IPhones and Android phones has radically created new opportunities in performance based marketing.

41.     These new mobile phone connect to the Internet and receive text messages in addition to traditional phone calls.

42.     Companies can send a text message marketing offer to a consumer that includes a link to the Internet.

43.     Cactus Media like many other companies is responsible for creating the offers for its "advertiser" clients like ADT Home Security Systems, Dr. Suess & His Friends, and ITT.

44.     Cactus Media through its Mobile Cactus division designs custom landing pages for the text message offers and has a large private network of publishers to send the offers to consumers.

45.     The $1000 Giftcard offer link leads to what is known as co-registration path.

46.     A co-registration path contains offers from advertisers such as

that requires a purchase of silver, gold and platinum offers from various

Defendants in order to claim the prize.

47.     The prize offer is made by Cactus Media and its co-sponsor Defendants.

48.     As Cactus Media discloses in its Privacy Policy on its website:

Company may provide a contest, sweepstake and other offering may be co-sponsored by another company. In those situations, the information we obtain from you in connection with such contest, sweepstake or offering may be shared with our co-sponsor. In those situations, our co-sponsors will have the right to use your information for their own purposes, in accordance with their own policies.

49.     Cactus Media also discloses in its Privacy Policy:

Other occasions when Company obtains information from you include (1) your claiming a prize or seeking to redeem an offer by Company or by a third party.... You acknowledge and agree that the SMS Service is provided via wireless systems which use radios (and other means) to transmit communications over complex networks.

50.     Defendants worked together to "make" the SMS "$1000 Giftcard" calls

with the prize offer to Plaintiff's and Class members cellular phones by using equipment

that had the capacity to store or produce telephone numbers to be called, using a

random number generator or sequential number generator and dial such numbers.

51.     The offer is made by the advertiser Defendants such as Equifax and Real

Networks Inc. in conjunction with affiliate network Defendants like Cactus Media -- this

offer is a co-registration offer - meaning in order to get the prize consumers must

register with one or more of the advertiser Defendants.

52.     This type of offer is used by many affiliate network companies that are part

of the Defendant class.  These companies use the same landing pages to promote the

offers made by the advertiser Defendants.

53.     The offer sent to Plaintiff lead to a co-registration path that included a Home Sweepstakes offer by JBR Media, a Credit Card Offer promoted by Find Fine Deals, a cell phone offer promoted by Inuvo Inc. doing business as Yellowise, then lead to Silver, Gold and Platinum Offers made by advertisers Defendants.

54.     The path lead to Dr. Suess offer that stated, "Order Today and receive 4 Dr. Suess and his friends books for just .99 each! Shipping is absolutely FREE!"

55.     The path lead to a NAMG offer for Santoku Knife that stated, "FREE Cooking Knife & FREE Gift! Pay just $3.00 shipping and handling. $100 total value."

56.     The path lead to a Consumerinfo.com Inc offer for CreditReport.com that stated Donate $1 to Charity Get Your Report & Score."

57.     The path lead to a Net Markets LLC offer for BioGeniste Instant Wrinkle Remover.

58.     The path lead to an offer for Elmo's Learning Adventure Package just $7.95 - Over a $40 Value!"

59.     The path lead to a Baby Einstein offer for Baby's First Learning Kit just $5.95".

60.     The path lead to an offer for "Disney Book Club" for 4 Disney Books for just .99 each"

61.     The path lead to an offer for the Simply Beads Club operated by Annies Publishing LLC.

62.     The path lead to an offer for Creative Girls Club operated by Annies Publishing LLC.

63.     The path lead to a Get Free Grant Money offer operated by Efamily Network Inc.

64.     The path lead to a Free Credit Report offer from Family SafeLife operated by Efamily Network Inc.

65.     The path lead to a "Get Unlimited Equifax Credit Scores with Equifax Complete Advantage!" from Equifax.

66.     The path lead to a FunPass Gamehouse offer from Real Networks.

67.     The path lead to a Better Homes offer to get Better Homes And Gardens and Family Circle for $20.

68.     The path lead to an offer for Amora Coffee from Fosina Marketing Group.

69.     The path lead to an offer to Download 25 FREE Songs Now! from Emusic, the "Best Value in Digital Music".

70.     Defendants and the Defendant Class used unsolicited $1,000 Giftcard text messages sent to Plaintiff and Plaintiff class members to make these commercial offers.

**Class Allegations**

71.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and a Class and Subclass against Defendants and a Defendant Class of affiliates, affiliate networks, and advertiser Defendants who made $1,000 Giftcard offers that were tied to co-registration offers:

72.     Numerosity: The exact number of the members of the Class and SubClass is unknown and not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable based upon numerous complaints on the Internet and FTC Complaint that state millions of $1,000 text messages were sent.

73.     Typicality: Plaintiffs' claims are typical of the claims of other members of the Class and SubClass, as Plaintiffs and other members sustained damages arising out of the wrongful conduct of Defendant, based upon the same transactions which were made uniformly to Plaintiff and other members of the public.

74.     Adequate Representation: Plaintiffs will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex class actions. Plaintiffs have no interest antagonistic to those of the Class and SubClasses, and Defendants has no defenses unique to Plaintiffs.

75.     Predominance and Superiority: This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by the individual members of the Class and SubClass will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by the actions of Defendants. It would be virtually impossible for the individual members of the Class and SubClasses to obtain effective relief from the misconduct of Defendant. Even if members of the Class and SubClasses themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

76.     Commonality: There are many questions of law and fact common to the claims of Plaintiffs and the Class and SubClass, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not limited to the following:

(a)     Whether Defendants' violated the TCPA (47 U.S.C. § 227);

(b)     Whether Defendants' committed a breach of contract;

(b)     Whether Defendants' violated Illinois the Prizes and Gifts Act (815 ILCS 525/40);

**COUNT I - TCPA CLAIM ON BEHALF OF PLAINTIFF AND THE CLASS**

77.     Plaintiff reincorporates paragraphs 1-75 into this claim.

78.     The Telephone Consumer Protection Act provides for damages and injunctive relief to consumers to stop unlawful calls and an SMS text message is a call under the TCPA.

79.     Defendants and Defendant Class Members caused calls in the form of a SMS text messages to be made to Plaintiff and the Class.

80.     The calls sent an artificial messages to Plaintiff and the class. A SMS text message communicates the voice of the caller in written text and such voice was artificial in the subject message

81.     On information and belief, the calls were made using equipment that was capable of being an automated telephone dialing system. Those facts will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. CCL has admitted to using equipment that has predictive dialer capacity to make calls in job postings.

82.     On information and belief, the equipment used to make the subject calls had the capacity to store or produce telephone numbers to be called, using a random number generator or sequential number generator and dial such numbers. Those facts will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

83.     The calls were sent from an institutional senders and without any personalization.  The subject calls were made for telemarketing purposes.

84.     There was no reason to call Plaintiff and the Class other than for telemarketing purposes.

85.     On information and belief, the phone number of Plaintiff and class members resides in a database that can be used to generate future calls using a computer, predictive dialer, random number generator or sequential number generator and dial such numbers.  Those facts will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

86.     Defendants and Defendant Class Members violated 47 U.S.C. § 227(b)(1) and thus Plaintiff and the Class are entitled to damages and injunctive relief to remedy Defendants' violation of the TCPA. See Abbas v. Selling Source, LLC, No. 09-CV-3413 (N.D. Ill. Dec. 14, 2009).

87.     The party on whose behalf a solicitation or advertisement is made is responsible for any TCPA violations, without regard to technical agency law. Glen Ellyn Pharmacy, v. Promius Pharma, LLC, No. 09 C 2116, 2009 U.S. Dist. LEXIS 83073, *7-12 (N.D. Ill. Sept. 11, 2009); United States v Dish Network, LLC, 2010-1 CCH Trade Cases ¶76910 (C.D.Ill. 2010); Worsham v. Nationwide Ins. Co., 138 Md. App. 487, 772

A.2d 868, 878 (2001) (independent contractor status of the fax broadcaster does not

shield the person on whose behalf the fax was sent from liability); Hooters of Augusta v.

Nicholson, 245 Ga. App. 363, 537 S.E.2d 468, 472 (2000) ("[W]e conclude that an

advertiser may not avoid liability under the TCPA solely on the basis that the

transmission was executed by an independent contractor"); In the Matter of Rules and

Regulations Implementing the Telephone Consumer Protection Act of 1991,FCC

Release No. 95-310, CC Docket No. 92-90, 10 FCC Rcd 12391; 1995 FCC LEXIS

5179; 78 Rad. Reg. 2d (P & F) 1258 (August 7, 1995), ¶¶34-35.

**COUNT II**
**BREACH OF CONTRACT ON BEHALF OF CLASS**

88.    Plaintiff reincorporates paragraphs 1-87 into this claim.

89.    Defendants and Defendant Class members made a unilateral prize offer to

Plaintiff and the Class.

90.    Defendants and Defendant Class members breached the covenant of

good faith and fair dealing because the unilateral prize offer contract was false.

Defendants never intended on awarding a $1,000 Giftcard as a unconditional prize to

Plaintiff and the Class.

91.    Defendant and Defendant Class members caused $1,000 in damages to

Plaintiff and the Plaintiff Class Members as a result of their breach of the unilateral prize

contract.

**COUNT III - CLAIM UNDER ILLINOIS PRIZES AND GIFTS ACT**
**ON BEHALF OF PLAINTIFF AND SUBCLASS**

92.    Plaintiff reincorporates paragraphs 1-91 into this claim.

93.     Defendants and Defendant Class Members sponsored a written prize offer that was sent to Plaintiff and SubClass.

94.     The subject written prize offer required payment as a condition of awarding the person a prize by illegally requiring payment for the advertiser Defendants' and Defendant Class Members' offers.  See 815 ILCS 525/20.

95.     The SMS text message representation was false, deceptive, or misleading because the consumer did not actually win a $1000 Giftcard. 815 ILCS 525/20.

96.     Defendants caused loss to Plaintiff and the SubClass as a result of violation of the Illinois Prizes and Gifts Act and is liable under 815 ILCS 525/40(b).

**REQUESTS FOR RELIEF**

WHEREFORE, Plaintiff on behalf of herself and members of the Class and SubClass, prays for the following relief:

A.      Grant class certification naming Plaintiff as Class Representative and his attorneys as Class Counsel and certifying a Defendant Class;

B.       Enter judgment against Defendants and Defendant Class in favor of Plaintiff and the Class and SubClass for all monetary, actual, consequential, and compensatory damages caused by their unlawful conduct;

C.      Award Plaintiff and the Class and Subclass civil penalties for violations of the above-cited statutes and law;

D.      Award Plaintiffs and the Class and Subclass reasonable costs and attorneys' fees;

E.      Enter judgment for injunctive, statutory and/or declaratory relief as is necessary to protect the interests of Plaintiffs and the Class and SubClass against Defendants and the Defendant Class; and

F.      Award such other and further relief as equity and justice may require.


Plaintiff, Melissa Sobota


__/s/_Mark_T._Lavery_____
        By One of Her Attorneys


Mark Lavery                              Christopher V. Langone
733 Lee St., Suite 205                   207 Texas Lane
Des Plaines, IL 60016                    Ithaca, NY
847-813-7771
mark@laverylawfirm.com